STATE *v.* INTERNATIONAL PAPER COMPANY.

October Term, 1922.

Present:   WATSON, C. J., POWERS, TAYLOR, MILES, and SLACK, JJ.

Opinion filed May 5, 1923.

*Constitutional Law—Taxation—Limitation of Right of State to Regulate Foreign Corporations—Tax on Insurance Premiums as Applied to Policies Obtained Outside the State Unconstitutional.*

1.   The Federal Constitution does not permit a state either by fine or tax, however small, to deprive a person of his liberty to enter into a valid contract which is neither made nor to be performed in such state, and especially where both the contracting parties reside outside the state.

2.  The State may regulate the activities of foreign corporations within the State, but it cannot regulate or interfere with what they do outside the State.

3.  No. 43 of the Acts of 1919, which imposes a tax on the gross premiums which may be paid for insurance, by all persons, companies, associations or corporations residing or doing business in Vermont to insurance companies not authorized to do business in this State, *held* invalid and unconstitutional under the Fourteenth Amendment to the United States Constitution, in that it deprived the parties of the liberty to contract guaranteed by such amendment.

ACTION OF CONTRACT to recover taxes on the gross premiums paid to certain insurance companies not authorized to do business in Vermont. Heard on an agreed statement of facts by the court, at the April Term, 1922, Windham County, *Wilson, J.,* presiding. Judgment for the plaintiff. The defendant excepted. The opinion states the case. *Reversed, and judgment for the defendant.*

*Harvey, Maurice & Fitts* for the defendant.

A corporation is a person within the meaning of the due process clause and equality clause of the Fourteenth Amendment. *Lawrence* v. *Rutland Railroad Co.,* 80 Vt. 378.

An excise tax cannot constitutionally be imposed upon the performance of an act outside the limits of the governmental unit by which the excise is levied. 26 R. C. L. 296; *Sellinger* v. *Kentucky,* 213 U. S. 200; *Provident Savings Assn.* v. *Kentucky,* 239 U. S. 103.

A state cannot prohibit a person residing within its limits and having property therein from procuring a policy of insurance thereon in another state. Joyce on Insurance, 2nd ed. Sec. 332; *Swing* v. *Hill,* 165 Ind. 411, 75 N. E. 658; *W. Mass. Mut. Fire Ins. Co.* v. *Hilton,* 58 N. Y. S. 966; *Atlas Mutual Insurance Co.* v. *Fisheries Co.* (Del.), 68 Atl. 4; *Hammond* v. *Int. Ins. Co.,* 116 N. Y. S. 854

A tax imposed by a state on the gross premiums paid for insurance on property in the state, to insurance companies not authorized to do business therein, is in violation of the due

process clause of the Fourteenth Amendment of the Constitution of the United States. *Allgeyer* v. *Louisiana,* 165 U. S. 578; *New York Life Ins. Co.* v. *Head,* 234 U. S. 149; *Hyatt State Ins. Commr.* v. *Blackwell Lumber Company,* 31 Idaho 452, 173 Pac. 1083; *New York Life Ins. Co.* v. *Dodge,* 246 U. S. 357, 62 L. ed. 772, 38 Sup. Ct. 337; *International Paper Co.* v. *Massachusetts.* 246 U. S. 135, 62 L. ed. 624.

*Frank C. Archibald,* Attorney-General, and *Fred B. Thomas* for the State.

The power of taxation belongs to the legislative branch of the government, which may decide the amount to be raised and what may be taxed, subject only to express constitutional limitations. *People* v. *Reardon,* 184 N. Y. 431, Affirmed, 204 U. S. 152; *Holmes* v. *Jennison,* 14 Pet. 540; *Hamilton Mfg. Co.* v. *Mass.,* 6 Wall. 639.

Everything to which the legislative power extends may be subject of taxation, whether persons, property, possession, franchise, privilege, occupation or right. *Catlin* v. *Hall,* 21 Vt. 152, Cooley on Taxation, 3d ed., Vol. 1, p. 9.

The State has the right to devise its own system of taxation free from federal interference. *Kelley* v. *Pittsburg,* 104 U. S. 78; Cooley on Taxation, 3d ed., Vol. 1, pp. 55-56.

The classification of property and subjects of taxation does not violate the constitutional provision (Vermont Const. Article IX, Chap. 9), relative to each individual contributing his proportionate share toward the public expense. *State* v. *Clement National Bank,* 84 Vt. 174, 191; *In re Hickok's Estate,* 78 Vt. 259, at pp. 264-265.

The tax on gross premiums paid for insurance in this State to insurance companies not authorized to do business in the State does not interfere with interstate commerce, because insurance is not commerce and hence state laws affecting insurance cannot be held to violate the terms of the Constitution of the United States in relation to interstate commerce. *Paul* v. *Virginia,* 8 Wall. 168; *Philadelphia Fire Insurance Co.* v. *New York,* 119 U. S. 110; *Hooper* v. *California,* 155 U. S. 648, 655.

Such a tax is not contrary to the provisions of the Fourteenth Amendment to the Constitution of the United States.

*Cook* v. *Howland*, 74 Vt. 393; *Lawrence* v. *Rutland R. R. Co.*, 80 Vt. 370.

Every presumption is to be made in favor of the constitutionality. of a statute, and it is not to be adjudged unconstitutional without clear and irrefragable evidence that it infringes the paramount law. *State* v. *Clement National Bank*, 84 Vt. 167, 200; *In re Hackett*, 53 Vt. 354; *Nicol* v. *Arms*, 173 U. S. 509.

SLACK, J.   This action is to recover taxes assessed pursuant to the provisions of Act No. 43, Acts 1919, on the gross premiums paid by the defendant for insurance on its property in this State, to insurance companies not authorized to do business in this State.

That part of the statute material to the question for consideration reads as follows: "All persons, companies, associations or corporations residing or doing business in this state that enter into any agreements with an insurance company * * * * not authorized to do business in this state, whereby said person, company, association or corporation shall enter into contracts of insurance covering risks within this state, with said unauthorized association * * * * for which there is a premium charged of or collected from said person * * * so insured, shall, annually on the first day of December or within ten days thereafter, return to the tax commissioner a statement, under oath, of all policies or contracts of insurance or indemnity taken by said person * * * * during the preceding twelve months. Such statement shall show the amount of insurance and the gross premiums paid to each stock company for insurance during the period covered by such statement, and there may be deducted from the gross premiums any premiums returned to the insured on policies cancelled where such policies have been issued during the term covered by the statement, or premiums returned on policies cancelled where such original premiums have been previously taxed under this act; * * * * *.   The tax commissioner shall give notice to each person, company, association or corporation filing such return of the amount of his tax, computed at three per cent. of the gross premiums or deposits or payments made to secure the insurance or indemnity and said tax is hereby assessed and shall be payable to the state treasurer," etc.

The plaintiff had judgment below on an agreed statement of facts, and the case is here on exceptions saved by the defendant.

The agreed facts, so far as material to the question for review, are these: The defendant is a New York corporation with its principal office and place of business in New York City. During the time covered by the transactions alleged in the complaint, it was authorized to do business in this State, and owned a large amount of real and personal property located here, on which it procured insurance in companies not authorized to do business in this State. Such insurance was procured in the manner following: The defendant, through its New York office, entered into negotiations, by mail, with the agents of certain fire insurance companies having offices in Boston, Massachusetts, for the purpose of procuring insurance on its Vermont properties in the companies represented by such agents; and as a result of those negotiations, the defendant, through its New York office, entered into the contracts of insurance here involved, with said companies, through their Boston agents. The companies caused the policies in question to be issued to the defendant and mailed to it at its New York office, and upon receipt of same by defendant, at that office, it paid, through that office, to the Boston agents, the premiums due on those policies. None of the negotiations relating to those contracts or policies of insurance took place in this State; and all losses under the policies were payable to the defendant at its New York office, where the policies were kept ever after they were received by the defendant.

The defendant contends that the statute under which the taxes in issue were assessed is repugnant to the Fourteenth Amendment of the Federal Constitution, in that it deprives the defendant of its liberty and property without due process of law. This is the sole question for review.

The constitutionality of a statute of similar import was before the Court in *Allgeyer* v. *Louisiana,* 165 U. S. 578, 41 L. ed. 832, 17 Sup. Ct. 427. A statute of Louisiana provided, in substance, that a person, firm or corporation, who did any act in that state, to effect for himself or another, insurance on property in that state, in a marine insurance company which had not complied with the laws of that state should be subject to a fine of one thousand dollars. The plaintiffs in error were cotton brokers doing business in New Orleans. They procured an open

policy of marine insurance on cotton to be shipped from that port, in a New York corporation which had not been authorized to do business in that state. By the terms of the policy, shipments to which the policy applied were to be reported to the insurer by mail or telegraph the day purchased, and thereupon a separate policy was to be issued covering such risk. Both the general contract contained in the open policy, and the special insurance upon each shipment of which notice was given, were New York contracts. All premiums, and losses under the policy, were payable in New York. The acts of Allgeyer & Co., which it was claimed violated the statute were the mailing, by them at New Orleans, of letters of notification of the various purchases or shipments in accordance with the terms of the open policy. It was held that, applied to the facts in that case, the Louisiana statute was repugnant to that clause of the Federal Constitution relied upon by the defendant in the instant case, in that it deprived the insured of their liberty to enter into a contract which was neither made nor to be performed in that state. The court said at page 589: "The Supreme Court of Louisiana says that the act of writing within that state, the letter of notification, was an act therein done to effect an insurance on property then in the state, in a marine insurance company which had not complied with its laws, and such act was, therefore, prohibited by the statute. As so construed we think the statute is a violation of the Fourteenth Amendment of the Federal Constitution, in that it deprives the defendants of their liberty without due process of law. The statute which forbids such acts does not become due process of law, because it is inconsistent with the provisions of the Constitution of the Union. The liberty mentioned in the [Fourteenth] Amendment means not only the right of the citizen to be free from the mere physical restraint of his person, as by incarceration, but the term is deemed to embrace the right of the citizen to be free in the enjoyment of all his faculties; to be free to use them in all lawful ways; to live and work where he will; to earn his livelihood by any lawful calling; to pursue any livelihood or avocation, and for that purpose to enter into all contracts which may be proper, necessary, and essential to his carrying out to a successful conclusion the purposes above mentioned." And it is said further, at page 592: "The mere fact that a citizen may be within the limits of a particular state does not prevent his

making a contract outside its limits while he himself remains within it. * * * * The contract in this case was thus made. It was a valid contract, made outside the state, to be performed out-side the state, although the subject was property temporarily within the state.'' In short, that case holds that a state cannot penalize a person for making a valid contract outside its limits, and over which it has no jurisdiction—that a state cannot, con-sistently with the due process clause of the Fourteenth Amend-ment, extend its authority beyond its legitimate jurisdiction either by way of wrongful exertion of its judicial powers or the unwarranted exercise of its taxing powers.

The doctrine announced in the Allgeyer case has been fol-lowed in the more recent decisions of that Court. *New York Life Ins. Co.* v. *Head,* 234 U. S. 149, 58 L. ed. 1259, 34 Sup. Ct. 879; *Provident Savings Association* v. *Kentucky,* 239 U. S. 103, 60 L. ed. 167, 36 Sup. Ct. 34; *New York Life Ins. Co.* v. *Dodge,* 246 U. S. 357, 60 L. ed. 772, 38 Sup. Ct. 337, Ann. Cas. 1918E, 593; *St. Louis Cotton Compress Co.* v. *Arkansas* (December 4, 1922), 67 L. ed. —, 43 Sup. Ct. 125. See, also, *Hyatt* v. *Black-well Lumber Co.,* 31 Idaho 452, 173 Pac. 1083, 1 A. L. R. 1663.

The Arkansas case is, in all essential features, like the case before us. There, the plaintiff in error, a Missouri corporation, was authorized to do business in Arkansas, and owned a large amount of property in that state upon which it procured insur-ance in companies not authorized to do business therein. . The contracts of insurance were made, and were to be performed, outside the state of Arkansas. That state attempted to recover taxes assessed under a statute similar to our own, on the gross premiums paid for such insurance. The court of Arkansas held the statute constitutional, on the ground that the tax thereby imposed was an occupation tax (147 Ark. 406, 227 S. W. 605), but the decision was reversed by the Federal Supreme Court. *St. Louis Cotton Compress Co.* v. *Arkansas, supra.*

[1-3]   The fact that our statute does not impose so large a tax upon premiums paid to unauthorized companies as does the Arkansas statute is of no importance. The Federal Constitution does not permit a state, either by fine or tax, however small, to deprive a person of his liberty to enter into a valid contract which is neither made nor is to be performed in such state; and, especially is this true where, as in the instant case, the contract-

ing parties both reside outside the state. As is said in the Arkansas case: "The state may regulate the activities of foreign corporations within the state but it cannot regulate or interfere with what they do outside [the state]."

It is not necessary, nor could it serve any legitimate purpose, to discuss other points made in plaintiff's brief in support of the constitutionality of this statute. It is sufficient to say that they have been carefully examined and disclose no grounds upon which the statute can be sustained.

*Judgment reversed, and judgment for the defendant to recover its costs.*

NOTE:—MILES, J., having ceased to be a member of the Court took no part in this decision.