**DOW CHEMICAL COMPANY,**
Appellant,

v.

**Carole Keeton RYLANDER, Comptroller of Public Accounts of the State of Texas; and John Cornyn, Attorney General of the State of Texas, Appellees.**

No. 03–00–00354–CV.

Court of Appeals of Texas,
Austin.

Jan. 25, 2001.

Ray Langenberg, Scott, Douglass & McConnico, L.L.P., Austin, for Appellant.

William E. Storie, Asst. Atty. Gen., Austin, for Appellee.

Before Justices KIDD, YEAKEL and JONES. *

YEAKEL, Justice.

Appellant Dow Chemical Company ("Dow") appeals from the district court's summary judgment in favor of appellees, Carole Keeton Rylander, Comptroller of Public Accounts of the State of Texas, and John Cornyn, Attorney General of the State of Texas, denying Dow a refund of taxes previously paid.[1]  Dow also appeals the district court's denial of its own motion for summary judgment.  We will reverse the district court's summary judgment and render judgment granting Dow's motion for summary judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Dow is a Delaware corporation headquartered in Michigan and authorized to

---

* Before J. Woodfin Jones, Justice (former), Third Court of Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. § 75.003(a)(1) (West 1998).

1. The interests of the comptroller and the attorney general do not diverge.  We will therefore refer to them jointly as the "Comptroller."

do business in Texas. *See* Tex. Bus. Corp. Act Ann. art. 8.05 (West Supp.2001). Dow owns real and personal property in Texas. Although the property is located in Texas, Dow insures it through out-of-state insurance companies. These insurance companies are not authorized to sell insurance in Texas. Texas terms such insurance—covering Texas risks but purchased from out-of-state insurance companies—"independently procured insurance" and imposes a tax on it. *See* Tex. Ins.Code Ann. §§ 101.252, .053(b)(4) (West Supp.2001). Dow is required to file reports with and pay the tax to the Comptroller. *See id.* § 101.252(a).

The Comptroller audited Dow for the period January 1, 1991 through December 31, 1997. *See* Tex. Tax Code Ann. § 111.004 (West 1992). As a result of the audit, the Comptroller assessed Dow $427,148.80 for independently procured insurance taxes, penalties, and interest. *See* Tex. Ins.Code Ann. § 101.252. Dow paid the assessment under protest and filed this suit in district court seeking a refund of its payment. *See* Tex. Tax Code Ann. § 112.151 (West Supp.2001); Tex. Gov't Code Ann. §§ 403.201–.204 (West 1998). The parties submitted competing motions for summary judgment. The district court granted summary judgment in favor of the Comptroller and denied Dow's motion. By one issue, Dow appeals, asserting that the district court erred in granting the Comptroller's motion and denying its motion for summary judgment.

## DISCUSSION

### *Dow Chemical's Failure to Provide Notice*

■ The insurance code requires that an insurer or other person who claims an exemption based on the United States Constitution must file notice of the claim with the commissioner of insurance before commencing operations. *See* Act of May 27, 1985, 69th Leg., R.S., ch. 918, § 3, 1985 Tex. Gen. Laws 3088, 3090 (Tex. Ins.Code Ann. art. 1.14–1, § 14, since repealed and codified at Tex. Ins.Code Ann. § 101.004 (West Supp.2001)).[2] Initially, the Comptroller urges, but does not assert as error, that the notice provision applies to Dow because of the "State's substantial interest in regulating insurance." The Comptroller "raise[s] this issue only as a defensive matter" and argues that this Court "should consider remanding the case if it finds this issue controlling." We do not.

■ The goal of statutory construction is to give effect to the intent of the legislature. *Sorokolit v. Rhodes,* 889 S.W.2d 239, 241 (Tex.1994). If language in a statute is unambiguous, a court must seek the intent of the legislature as found in the plain and common meaning of the words and terms used. *Id.*

Section 101.004(a) of the insurance code states that Texas's independently procured insurance tax does "not apply to an insurer or other person to whom, under the constitution or statutes of the United States or the constitution of this state, it may not apply." Tex. Ins.Code Ann. § 101.004(a) (West Supp.2001). Section 101.004(b) continues, "Before commencing operations, an insurer or other person claiming an exemption described by Subsection (a) must file with the commissioner: (1) notice of the claim; and (2) documents supporting the claim." *Id.* § 101.004(b). Although she states that the phrase "before commencing operations" is "admittedly obscure," the Comptroller urges us to hold that it is "broad enough to cover Dow's operations." However, the language of this section demonstrates that it is not meant to apply in the manner the Comptroller suggests. A close look at the policy and purpose behind the statute illustrates this point. The portion of the insurance code to which this section now refers is chapter 101, entitled "Unauthorized Insurance." *Id.* § 101.001. Its policy

2. Although the original statute has been repealed and codified, the changes are not substantive, and we will cite to the current code for convenience.

and purpose section states, "It is a state concern that many residents of this state hold insurance policies issued by persons or insurers who are not authorized to do insurance business in this state. . . . These residents face often insurmountable obstacles in asserting legal rights under the policies in foreign forums under unfamiliar laws and rules of practice." *Id.* § 101.001(a). The section continues that "it is the policy of this state to protect residents against acts by a person or insurer who is not authorized to do business in this state." *Id.* § 101.001(b). Dow is not an insurer, nor has it engaged in unauthorized insurance business.

■ In addition, the notice requirement on which the Comptroller relies was enacted in 1985. *See* Act of May 27, 1985, 69th Leg., R.S., ch. 918, § 3, 1985 Tex. Gen. Laws 3088, 3090 (Tex. Ins.Code Ann. art. 1.14–1, § 14, since amended). Using the application the Comptroller urges, Dow would have been required to provide notice *before* the notice provision was ever enacted if Dow commenced operations prior to 1985. Such a result does not follow logic. Construction of the plain language of statutes must avoid absurd results if the language will allow. *See Fitzgerald v. Advanced Spine Fixation Sys., Inc.,* 996 S.W.2d 864, 867 (Tex.1999). We hold that the notice requirements of the insurance code do not apply to Dow.

## Texas's Independently Procured Insurance Tax

■ The parties do not dispute the facts of this case and, in their motions, both assert a right to summary judgment as a matter of law. Because the propriety of summary judgment in this case is a question of law, we review the district court's decision *de novo. See McCarthy Bros. Co. v. Continental Lloyds Ins. Co.,* 7 S.W.3d 725, 728 (Tex.App.—Austin 1999, no pet.); *Rylander v. 3 Beall Bros. 3, Inc.,* 2 S.W.3d 562, 566 (Tex.App.—Austin 1999, pet. denied). When both sides move for summary judgment and the trial court

grants one motion and denies the other, we review the summary-judgment proof presented by both sides and determine all questions presented. *Commissioners Court v. Agan,* 940 S.W.2d 77, 81 (Tex. 1997). If we find error, we must render the judgment the trial court should have rendered. *Id.*

■ The validity of the tax before us has previously been presented to this Court, the Texas Supreme Court, and the United States Supreme Court. *See State Bd. of Ins. v. Todd Shipyards Corp.,* 340 S.W.2d 339 (Tex.Civ.App.—Austin 1960), *writ ref'd n.r.e.,* 162 Tex. 8, 343 S.W.2d 241 (Tex.1961), *aff'd,* 370 U.S. 451, 82 S.Ct. 1380, 8 L.Ed.2d 620 (1962). Ultimately, the United States Supreme Court held that Texas's independently procured insurance tax violated federal law, specifically the McCarran–Ferguson Act, 15 U.S.C.A. §§ 1011–15 (West 1997). *State Bd. of Ins. v. Todd Shipyards Corp.,* 370 U.S. 451, 82 S.Ct. 1380, 8 L.Ed.2d 620 (1962).

### A. Todd Shipyards

Prior to Congress's passage of the McCarran–Ferguson Act, the Supreme Court held that the Due Process Clause dictated that states could not tax the business of insurance. *See Connecticut Gen. Life Ins. Co. v. Johnson,* 303 U.S. 77, 58 S.Ct. 436, 82 L.Ed. 673 (1938); *St. Louis Cotton Compress Co. v. Arkansas,* 260 U.S. 346, 43 S.Ct. 125, 67 L.Ed. 297 (1922); *Allgeyer v. Louisiana,* 165 U.S. 578, 17 S.Ct. 427, 41 L.Ed. 832 (1897). The Supreme Court has summarized these three cases as follows:

> The *Allgeyer* case held that Louisiana by reason of the Due Process Clause of the Fourteenth Amendment could not make it a misdemeanor to effect insurance on Louisiana risks with an insurance company not licensed to do business in Louisiana, where the insured through use of the mails contracted in New York for the policy. The *St. Louis Cotton Compress* case held invalid under

the Due Process Clause an Arkansas tax on the premiums paid for a policy on Arkansas risks, made with an out-of-state company having no office or agents in Arkansas. The *Connecticut General Life Insurance* case held invalid under the Due Process Clause a California tax on premiums paid in Connecticut by one insurance company to another for reinsurance of life insurance policies written in California on California residents, even though both insurance companies were authorized to do business in California.

*Todd Shipyards*, 370 U.S. at 453–54, 82 S.Ct. 1380.

After its decisions in *Connecticut General, St. Louis Cotton Compress*, and *Allgeyer*, the Supreme Court held that the modern business of insurance was "interstate commerce." [3] *See United States v. South–Eastern Underwriters Ass'n*, 322 U.S. 533, 545–51, 64 S.Ct. 1162, 88 L.Ed. 1440 (1944). Interstate commerce implicates the Commerce Clause. *See id.* at 538–39, 64 S.Ct. 1162. The Commerce Clause provides Congress with the "positive power" to regulate such business. *Id.* at 552–53, 64 S.Ct. 1162. In *South–Eastern Underwriters*, the Court upheld congressional regulation of insurance. *See id.* at 562, 64 S.Ct. 1162. However, the Court did not hold that the states were necessarily prohibited from continuing to regulate insurance transactions and practices.[4] *See id.* at 534–62, 64 S.Ct. 1162.

Then in 1945, Congress passed the McCarran–Ferguson Act. The McCarran–Ferguson Act "provided that the regulation and taxation of insurance should be left to the States, without restriction by

reason of the Commerce Clause." *Todd Shipyards*, 370 U.S. at 452, 82 S.Ct. 1380; *see* McCarran–Ferguson Act §§ 1011–15. But the history of the McCarran–Ferguson Act also provides "an explicit, unequivocal statement that the Act was so designed as not to displace" *Connecticut General, St. Louis Cotton Compress*, and *Allgeyer*. *Todd Shipyards*, 370 U.S. at 455, 82 S.Ct. 1380. In *Todd Shipyards*, the Supreme Court held that Texas's independently procured insurance tax violated McCarran–Ferguson. Curiously, such a holding from the United States Supreme Court has not dissuaded the Comptroller from levying this tax. But *Todd Shipyards* controls our analysis today. *See Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 484, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989).

### B. The Texas Tax

Today's question is whether Dow is engaged in the same insurance activities as was Todd Shipyards. At the time of *Todd Shipyards*, the independently procured insurance tax statute was codified in article 21.38 of the insurance code and provided the following:

> If any person, firm, association or corporation shall purchase from an insurer not licensed in the State of Texas a policy of insurance covering risks within this State in a manner other than through an insurance agent licensed as such under the laws of the State of Texas, such person, firm, association or corporation shall pay to the Board a tax of five per cent (5%) of the amount of the gross premiums paid by such insured for such insurance.

---

**3.** In several prior cases involving challenges to state regulation, the Court had held that the buying and selling of insurance was not commerce at all. *See New York Life Ins. Co. v. Deer Lodge County*, 231 U.S. 495, 34 S.Ct. 167, 58 L.Ed. 332 (1913); *Hooper v. California*, 155 U.S. 648, 15 S.Ct. 207, 39 L.Ed. 297 (1895); *Paul v. Virginia*, 75 U.S. (8 Wall.) 168, 19 L.Ed. 357 (1869).

**4.** At the time of *South–Eastern Underwriters*, the Supreme Court had upheld state regulation of insurance in a number of cases. *See Hoopeston Canning Co. v. Cullen*, 318 U.S. 313, 63 S.Ct. 602, 87 L.Ed. 777 (1943); *Osborn v. Ozlin*, 310 U.S. 53, 60 S.Ct. 758, 84 L.Ed. 1074 (1940); *New York Life Ins.*, 231 U.S. 495, 34 S.Ct. 167, 58 L.Ed. 332; *Hooper*, 155 U.S. 648, 15 S.Ct. 207, 39 L.Ed. 297; *Paul*, 75 U.S. (8 Wall.) 168, 19 L.Ed. 357.

Act of May 14, 1957, 55th Leg., R.S., ch. 395, § 1, 1957 Tex. Gen. Laws 1180, 1181 (Tex. Ins.Code Ann. art 21.38, § 2(e), since repealed and codified at Tex. Ins.Code Ann. § 101.252 (West Supp.2001)). In similar terms, the tax at issue in this case is applied as follows:

> Every insured who procures insurance in [transactions involving contracts of insurance independently procured through negotiations occurring entirely outside of this state which are reported and on which premium tax is paid] must file a report with the comptroller and pay an independently procured insurance tax of 4.85 percent.

Act of May 27, 1993, 73d Leg., R.S., ch. 999, § 7, 1993 Tex. Gen. Laws 4373, 4373 (Tex. Ins.Code Ann. art 1.14–1, § 12(a), since repealed and codified at Tex. Ins. Code Ann. § 101.252). The statutes are essentially the same, and, with the exception of the rate, they result in the same tax.

The factual similarities between Todd Shipyards and Dow are also readily apparent:

> In both instances the insurance in question covered property in Texas owned by a foreign corporation.

> All of the insurers are domiciled outside of this state.

> All of the insurance agreements made the basis of the tax were contracted for, signed, issued, delivered, paid for, and accepted out of this state.

> None of the insurers has a permit or license from Texas to write insurance in the state and none of the insurers are subject to examination or subject to any control by this state.

> None of the insurers has an office or agent in Texas.

> None of the insurers investigated or adjusted claims within Texas.

> None of the insurers ever solicited Todd Shipyards' or Dow's insurance business or policies within Texas.

> None of the insurers communicated with either Todd Shipyards or Dow within the state.

> All decisions relative to the purchase and renewal of insurance, extent and amount of coverage, the selection of insurers and confirmation of insurance contracts are made outside of Texas. Under the policies, all losses are payable out-of-state and all premiums are paid out-of-state.

Because the law and the facts at issue today are essentially the same, we hold that the insurance at issue in *Todd Shipyards* is virtually identical to the insurance at issue in this case.

### *Due Process*

■ The Comptroller urges us to ignore *Todd Shipyards* and apply a due-process analysis to the permissibility of a tax on independently procured insurance. The Comptroller argues that more recent due-process decisions have rejected "the meaningless formalisms of another era" and superseded *Todd Shipyards*. The Comptroller continues that "it would be unreasonable to expect the [Supreme] Court to undertake the daunting clerical task of identifying all the decisions" superseded by the Court's current line of due-process decisions and formally overrule them. However, a due-process analysis is unnecessary. We discern no difference between the tax at issue in *Todd Shipyards* and the tax challenged today. We must adhere to precedent in the face of a United States Supreme Court case directly on point. *See Rodriguez de Quijas,* 490 U.S. at 484, 109 S.Ct. 1917. In *Rodriguez de Quijas,* the Fifth Circuit Court of Appeals declined to follow a prior and controlling decision of the Supreme Court, stating that the decision had been reduced to "obsolescence" by subsequent decisions of the Court. *Id.* at 479, 109 S.Ct. 1917. In reviewing the court of appeals decision, the Supreme Court stated, "If a precedent of this Court has direct application to a case, yet appears to rest on reasons rejected in some other line of decisions, the

Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions." *Id.* at 484, 109 S.Ct. 1917. State courts are no exception; this Court is bound by *Todd Shipyards* unless and until the Supreme Court overrules it. *See Owens Corning v. Carter,* 997 S.W.2d 560, 571 (Tex.), *cert. denied,* 528 U.S. 1005, 120 S.Ct. 500, 145 L.Ed.2d 386 (1999).

## CONCLUSION

We sustain Dow's issue on appeal, reverse the judgment of the district court, and render judgment for Dow granting its motion for summary judgment.

JONES, J., not participating.